**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES SECURITIES AND**
**EXCHANGE COMMISSION,**

        Plaintiff,

      v.                               **Case No. 1:22cv21995**

**EMPIRES CONSULTING CORP. (DBA**
**"EMPIRESX"), EMERSON SOUSA PIRES,**
**FLAVIO MENDES GONCALVES,**
**and JOSHUA DAVID NICHOLAS,**

        Defendants.

_____/

## COMPLAINT

Plaintiff, United States Securities and Exchange Commission ("SEC"), alleges:

1.      This case stems from an illegal offering fraud scheme perpetrated by Defendants Emerson Sousa Pires and Flavio Mendes Goncalves, their company, Defendant Empires Consulting Corp. ("EmpiresX"), and EmpiresX's head trader, Defendant Joshua David Nicholas (collectively, "Defendants"). In less than two years, Defendants raised at least $40 million by selling EmpiresX investments to thousands of investors.

2.      Defendants lured investors with claims of "exponential" profits, expected investment returns of 1% per _day_, and the prospect of making millions of dollars "in a matter of months." Defendants told investors that EmpiresX would generate these outsized returns either through a proprietary trading "bot" or by manual trading performed by Defendant Nicholas. But these statements were lies. In reality, the bot was fake, Defendants traded only a fraction of the funds they took from investors, and that limited trading failed to earn anywhere near the expected returns Defendants touted to investors.

3.      Instead, Defendants misappropriated large sums of investors' money for personal uses such as luxury cars, real estate, and travel.

4.      Beyond their untrue claims of 1% daily profits earned by bot or manual trading, Defendants further lied to investors to give them assurances of the "transparency and safety" of their investments, even during market downturns.  To that end, Defendants falsely told investors that EmpiresX had filed paperwork with the SEC to register as a hedge fund, and directed investors to the filings of an unaffiliated hedge fund with a name similar to EmpiresX that actually had registered with the SEC.  Similarly, Defendants touted Nicholas as a licensed trader and deceptively showed investors the credentials of a different trader with a similar name to Nicholas, while concealing that Nicholas had been suspended from trading for misappropriating customer funds.

5.      As their scheme began to collapse, Defendants broke earlier promises that investors could easily withdraw their money and later assurances of repayment.  Instead, Defendants refused to honor investor requests to withdraw their funds and gave phony excuses why the investors could not be repaid.

6.      After learning of the SEC's investigation, Defendants Pires and Goncalves began winding down EmpiresX's United States operations and, in an effort to escape liability, relocated to Brazil.  They left investors with heavy losses.

7.      In addition to being fraudulent, Defendants' offers and sales of EmpiresX securities violated the registration provisions of the federal securities laws.

8.      The SEC brings this lawsuit to hold Defendants responsible for their fraud, prevent them from harming future investors, and return money to Defendants' victims.

**JURISDICTION AND VENUE**

9.      The SEC brings this action pursuant to Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)].

10.      This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and 28 U.S.C. § 1331.

11.      Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Acts, practices and courses of business constituting violations alleged herein have occurred within the jurisdiction of the United States District Court for the Southern District of Florida and elsewhere.

12.      Defendants directly and indirectly made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein, and will continue to do so unless enjoined.

**DEFENDANTS**

13.      **Defendant Empires Consulting Corp**. (dba "EmpiresX") is a Florida corporation with its principal place of business formerly in Fort Myers, Florida. Defendants Pires and Goncalves founded EmpiresX in 2020.  EmpiresX is not registered with the SEC in any capacity, nor has it ever registered any offering of securities under the Securities Act or any class of securities under the Exchange Act.

14.     **Defendant Emerson Sousa Pires** ("Pires"), age 33, formerly of Fort Myers, Florida, is EmpiresX's co-founder, president, director, and registered agent.  Pires now resides in Brazil, where he is a citizen.  When Pires registered EmpiresX as a corporation with the State of Florida, he listed his home address in Fort Myers – an address at which Pires no longer resides after relocating to Brazil – as EmpiresX's principal, registered agent, and mailing address.

15.     **Defendant Flavio Mendes Goncalves** ("Goncalves"), age 34, formerly of Port St. Lucie, Florida, is EmpiresX's co-founder, vice president, and director.  Goncalves now resides in Brazil, where he is a citizen.

16.     **Defendant Joshua David Nicholas** ("Nicholas"), age 28, of Stuart, Florida, was EmpiresX's head trader.  For brief periods in 2016 and 2020, Nicholas was a registered representative and investment adviser representative associated with broker-dealers and investment advisers.  In September 2020, the National Futures Association ("NFA") suspended Nicholas from membership and prohibited him from association with any NFA member, after Nicholas misappropriated client funds in order to fund a personal trading account.  In April 2021, the NFA extended Nicholas's suspension for an additional eight years.  In January 2022, the Financial Industry Regulatory Authority ("FINRA") barred Nicholas from associating with registered broker-dealers, as a result of that same conduct.

**FACTS**

**Overview of EmpiresX**

17.     In late 2020, Pires and Goncalves founded EmpiresX and based the company in South Florida.  Pires and Goncalves controlled EmpiresX, including its operations, the content of representations made to investors, and how EmpiresX used funds received from investors.

18.      Since its formation, EmpiresX raised at least $40 million from thousands of investors worldwide, including many investors in the United States, by offering and selling investments that Defendants claimed earned 1% daily returns.

19.     None of the securities or securities offerings described herein were registered with the SEC.

20.     Defendants represented to investors that EmpiresX was a hedge fund that planned to manage over $100 million in investor funds and had filed with the SEC to become a U.S. registered hedge fund.

21.     Defendants lured investors by offering and selling two different investment options that would each purportedly generate the 1% daily returns.

22.     The first investment option Defendants presented to investors were licenses to use EmpiresX's trading bot, which Defendants called the "Exbot."

23.     The second investment option Defendants presented to investors were "private" investments that involved the pooling of investor funds in EmpiresX's brokerage accounts, which Nicholas would use to manually trade stock, options, and futures.

24.     In order to bring in more investors, EmpiresX used a multi-level marketing plan to sell its investment products and provided incentives, including commissions and prizes, for current investors to find new investors.

25.     For example, both investors in the Exbot and the private investment programs received a 5% commission of the initial investment amount for anyone they persuaded to invest in EmpiresX.  EmpiresX also offered prizes to all investors whose downstream "network" sold between $16,000 and $80 million in investments, including electronics, travel vouchers, a Rolex watch, and various luxury vehicles.  The more new money investors brought in, the more expensive the prizes Defendants offered.

26.     The only information EmpiresX required investors to provide in order to invest was their name and email address.  Defendants otherwise conducted no due diligence concerning the investors' residency, financial situation, risk tolerance, or accredited investor status.

27.     To invest, new investors submitted payment of money to an EmpiresX bank account or sent Bitcoin or Ether to an EmpiresX digital wallet.

28.     For investors who invested using crypto, in an October 11, 2021 Zoom meeting with investors, Pires explained that after EmpiresX received investors' crypto, it converted the crypto into fiat currency, which was then deposited into a bank account and transferred to an EmpiresX brokerage account.

29.     After investors created and funded their accounts, investors could log onto their "back office," the section of EmpiresX website where investors accessed their accounts with their username and password.

30.     By accessing their account on their back office, investors could monitor their purported daily balance and returns, fund their principal, monitor commissions earned from recruiting new investors, and request withdrawals.

**Defendants Promised Safety, Transparency, and Outsized Returns**

31.     On multiple Zoom calls with investors, Defendants displayed a PowerPoint presentation that described the EmpiresX investment program.  Defendants also posted the PowerPoint on EmpiresX's website.

32.     While Defendants at times showed investors slightly different versions of the PowerPoint, each version contained the statements described below.

33.     The PowerPoint described ExpiresX's mission as helping investors "manage and multiply assets with transparency and safety."

34.     The PowerPoint noted that while many investors lost money during the COVID pandemic, even in a down market EmpiresX had an "exponential profit."  The PowerPoint thus described EmpiresX as having 30% monthly growth and a "6000% expectation for 2023."

35.     The PowerPoint then showed examples of investors' 1% daily profits, such as a $10,000 investment generating $100 per day in returns and 30% returns made in only a month.  According to Defendants, by compounding their returns investors could "make thousands turn into millions in a matter of months!"

36.     On various Zoom calls with investors over the course of their scheme Defendants made similar claims of 1% daily profits, 30% (or more) monthly returns, and "triple digits" annual returns.

**EmpiresX's Fake Trading Bot**

37.     One of the investment options Defendants presented to investors was EmpiresX's "Exbot" automated trading bot.  Defendants told investors that the Exbot was directly connected to EmpiresX's brokerage account at a major U.S. brokerage firm ("Brokerage Firm A").

38.     Defendants told investors they could license the Exbot, operate it to trade their invested principal, and that the bot would generate 1% daily returns.

39.     Pires told investors that they and EmpiresX would engage in profit sharing, with EmpiresX receiving 20% of the investors' returns and investors retaining the remaining 80%.  In a July 2, 2021 investor meeting, Goncalves told investors that the 20% daily profit taken from each investor's daily Exbot earnings was reinvested in EmpiresX.

40.     In order to use the Exbot, investors had to pay annual licensing fees ranging from $200-$400, invest a minimum of $500, and deposit more money to fund a separate "credit balance" account from which EmpiresX deducted their 20% fees.  EmpiresX pooled the money it received from the Exbot investors.

41.      Goncalves told investors that the money from the credit balance account was "thrown back into the company" in order to run the Exbot each day.  Once that credit balance declined to zero, investors lost access to the Exbot until they added new funds to their account.

42.     In various Zoom meetings with investors and prospective investors, Defendants falsely represented that the Exbot was connected to EmpiresX's online account at Brokerage Firm A and showed the Exbot purportedly actively trading in that account.

43.     In several investor Zoom meetings, Goncalves demonstrated how the Exbot purportedly worked.  He showed what happens by clicking "Start" or "Run Bot" on the EmpiresX "back office" and the reference codes that reflected executed trades.  He then searched for those reference codes on a purported Brokerage Firm A website and showed investors that the trades confirmed on EmpiresX's back office also appeared in EmpiresX's account at Brokerage Firm A.

44.     In an October 14, 2021 investor meeting, Goncalves showed that the cash balance of EmpiresX's online account at Brokerage Firm A had a balance of $136.7 million and had grown by $20 million in less than a week, and stated "we already hit our mark of $110 million just like we said."

45.     After investing, investors could log onto their "back office" on EmpiresX's website and, once per day, click a button to purportedly activate the Exbot or otherwise choose to have the bot run automatically every day.

46.     Investors were unable to choose the financial instruments or strategy in which the Exbot invested.  Instead, while the Exbot was in operation, investors' EmpiresX's back office simply displayed a graphic showing the bot running and generating trades, each with its own profit or loss.

47.     After the Exbot "earned" its 1% return for that day, which only required several minutes, the bot would stop running.  EmpiresX's back office would then display the purported value of the investor's funds resulting from the Exbot's trades.

48.     The representations Defendants made to investors about the Exbot were lies.  Defendants made these materially fraudulent statements knowingly or recklessly.

The bot was not connected to an EmpiresX account at Brokerage Firm A.  In fact, EmpiresX did not even have an account at Brokerage Firm A.  And, without any actual trading by the Exbot, the 1% daily returns were fictitious.

49.     In reality, the online Brokerage Firm A account shown to investors during live Zoom meetings was fake.  Unbeknownst to investors, the Brokerage Firm A online account shown to investors was actually a website registered to a company owned by Goncalves, which was designed to simulate an actual online account at Brokerage Firm A.

### EmpiresX's Fraudulent "Private" Investment Program

50.     In addition to the Exbot, Defendants also offered and sold "private" investments, which Defendants said would generate 1% daily returns from manual trading performed by Nicholas.

51.     For the private investments, in Zoom meetings Goncalves and Nicholas showed investors EmpiresX's investment performance as reflected in an online account at another major U.S. brokerage ("Brokerage Firm B") belonging to EmpiresX.  Goncalves and Nicholas referred to the account as a "hedge fund" whose profits were derived from Nicholas's selection of investments and timing of trades.

52.     For instance, in a November 4, 2021 Zoom meeting with investors, Nicholas touted the private investments' performance by showing investors EmpiresX's account at Brokerage Firm B, which at that time had a balance of $1.69 million and gains of $369,643 in one month (a month in which the broader stock market posted significant gains).  Nicholas told investors that $400,000 was deposited into this brokerage account in June 2021 and that by November the account is on the "precipice of $1.7 million."

Nicholas claimed that the trading results in EmpiresX's account at Brokerage Firm B outperformed the market. Pires added that no matter what happens to the market, EmpiresX still provides "amazing profits."

53.     As with the Exbot investors, the private investment investors could monitor the purported performance of their investments on their back office section of EmpiresX's website. For these investors, their back office would display the daily 1% profits Defendants told investors were earned through Nicholas's manual trading.

54.     As with the Exbot, Defendants' representations about the private investments' performance were lies. Defendants made these material and fraudulent statements knowingly or recklessly. In reality, whatever manual trading Nicholas actually performed did not generate 1% daily profits. In fact, much of Nicholas's trading resulted in significant losses.

55.     Nicholas's representations about the Brokerage Firm B account were similarly materially false and misleading. Most of the funds in the account were not profits, but instead were approximately $1 million of pooled investor funds that EmpiresX deposited into the account between April 16, 2021 and June 4, 2021. By early 2022, Nicholas's trading had lost nearly all of the money in the account.

**EmpiresX's Website Displayed Fake Investor Account Balances**

56.     For both the Exbot and private investors, Defendants used EmpiresX's back office to materially and knowingly misrepresent the investors' account balances.

57.     Those online accounts purportedly showed investors their daily profits and commissions earned, which led investors to believe they were making money from their

investments and recruitment of other investors.  Such representations led investors to re-invest their "profits," thereby delaying the time when EmpiresX would have to pay investors their proceeds.  Various investors also invested fresh funds or recruited new investors based on the profits they believed were generated by their original investments.

58.     In fact, the investor account balances were fictional and EmpiresX stopped honoring investor withdrawal requests after November 2021.

### Defendants' Lies About SEC Registration

59.     To make investors more comfortable with investing in EmpiresX, in Zoom meetings with investors, Defendants explained the importance of being a SEC-registered hedge fund.  Defendants told investors that EmpiresX filed to be a registered hedge fund with the SEC, and said EmpiresX received comments back from the SEC and was preparing documents for re-submission to the SEC.

60.     For example, on a September 9, 2021 Zoom call, Nicholas showed investors a "Prospectus" for a purported hedge fund controlled by Empires X, which would issue approximately 80 million shares at a price of $25 per share.  Nicholas stated that this Prospectus would be filed with the SEC as soon as EmpiresX reached $100 million in assets under management, which Nicholas suggested to investors would occur in the coming days.

61.     During that same presentation, Nicholas also showed investors contract documents that he claimed would be filed with the SEC.  Nicholas concluded the presentation by showing an official-looking SEC document – which was actually a SEC cease-and-desist order issued against an unrelated entity – and falsely stated that after the

SEC finished its review of EmpiresX's paperwork, the SEC would issue a similar document "verifying everything that we already have created."

62.     In an October 11, 2021 Zoom meeting with investors, Pires and Nicholas falsely told investors that EmpiresX had filed paperwork with the SEC, that the SEC provided feedback, and that EmpiresX had made a revised filing with the SEC.

63.     In an October 21, 2021 Zoom meeting with investors, Goncalves similarly lied by stating that EmpiresX made a revised filing with the SEC.  Goncalves added that he was "pretty sure" that EmpiresX would receive "SEC approval."

64.     Nicholas also lied to investors about EmpiresX's SEC registration status by directing them to the SEC filings of an unrelated company with a similar sounding name that contained the term "EmpireX."  In particular, in the October 11, 2021 Zoom meeting, Nicholas told investors that they could check the status of EmpiresX's filing with the SEC by going to sec.gov, searching for "EmpiresX," and see the paperwork EmpiresX had filed.

65.     After learning that EmpiresX was improperly directing investors to its SEC filings, the true filer with a similar name issued a press release that "den[ied] the statements of the … company 'EmpiresX' which has been illegally using our Name, Address, and Financial License from the United States to deceive people worldwide with fraudulent investment operations."

66.     Defendants' statements about filings, registrations, and communications with the SEC were knowingly or recklessly false and material.  The SEC never received any registration paperwork or filing from, and never provided feedback or suggestions to, EmpiresX.

**Defendants' Touted Nicholas's Credentials Yet Concealed His Disciplinary History**

67.     Similar to their lies about EmpiresX's registration with the SEC, Defendants touted to investors Nicholas's background, trading experience, and securities licenses, yet failed to disclose Nicholas's disciplinary history.  Defendants' knowingly or recklessly omitted this material information.

68.     As a result of his initial NFA suspension in September 2020, which the NFA extended for eight-years in April 2021, Nicholas could not trade or associate with any firm that traded futures, options, or commodities on behalf of investors.

69.     Nevertheless, in various recorded meetings with investors, Defendants represented that Nicholas was a licensed and registered trader.  But during those meetings Defendants failed to disclose Nicholas's NFA suspension or that the suspension was based on allegations that Nicholas misappropriated client assets.

70.     For example, in the July 2, 2021 Zoom meeting with investors, Goncalves said that EmpiresX would display Nicholas's license for investors to see and that without the license, EmpiresX would not be able to make "one single trade."  Nicholas then navigated to the FINRA "Brokercheck" page of an unrelated registered trader at a prominent investment bank with a name similar to Nicholas's.  The Brokercheck page Nicholas referenced to investors as being about him thus displayed information for a different trader with no disciplinary history and a variety of securities licenses.

71.     Only after online blogs publicized Nicholas' disciplinary history, Nicholas acknowledged his NFA suspension in a July 30, 2021 Zoom meeting with investors. Nevertheless, in subsequent investor meetings, Defendants would continue to promote

Nicholas's trading expertise without mentioning his suspension.

**Defendants' Material Misrepresentations**
**About Investors' Ability to Withdraw Their Money**

72.     To promote the investments and encourage investors to reinvest their "profits," Defendants told investors and prospective investors that they could compound their interest and also easily withdraw their funds.

73.     For example, the PowerPoint Defendants showed to investors initially represented that investors could withdraw their profits either weekly (for Exbot investors) or monthly (for "private" investors), and withdraw their capital "anytime, any day."

74.      Similarly, in a July 30, 2021 Zoom meeting with investors, Goncalves represented that investors could withdraw their funds "whenever you want."

75.     Having been told they could easily withdraw their money, most investors decided to reinvest their purported profits.

76.     To further discourage withdrawals, EmpiresX charged fees including a 20% fee for any withdrawals made within the first month of investing, which decreased to 0.5% for subsequent months.

77.     In October 2021, without any notice to investors, Defendants changed the rules for Exbot investors to withdraw their profits, from weekly to monthly.  Additionally, EmpiresX increased the withdrawal fees for both Exbot and private investors, such that the fee increased to 40% for withdrawals made within the first month of investing, 20% for withdrawals made within 60 days of investing, and 10% for withdrawals made within 90 days of investing.

78.     EmpiresX also instituted a new rule that investors could only withdraw their capital three times and thereafter, their accounts were closed.  These higher fees caused some investors to wait several months before requesting to withdraw funds from their accounts.  Investors who invested prior to October 2021 invested without having notice of these material changes to the withdrawal rules and fees.

### Defendants' Misuse of Investor Funds

79.     Between November 2020 and December 2021, EmpiresX received at least $40 million in investor funds.

80.     Despite Defendants' representations that investors' money would be deployed for trading, of this amount, Defendants only transferred approximately $1 million of investors' funds to EmpiresX's account at Brokerage Firm B.

81.     Therefore, rather than use investors' funds for trading, Defendants misappropriated a large amount of the money received from investors.

82.     For instance, Pires diverted investor funds for personal expenditures including the following:  $300,000 in travel expenses, $250,000 in home renovations, $125,000 for a down payment on another home, $70,000 for the lease down payment for a Lamborghini Urus, $47,000 in apparel, $33,000 in meals and groceries, $19,000 in mortgage payments, and $15,000 in home décor.  Pires also paid nearly $358,000 to another company he manages, and transferred over $250,000 to himself, relatives, and associates.

83.     For his part, Goncalves received at least $421,000 of investor funds, and his relatives received at least an additional $99,000.  Goncalves used the investor money for

personal uses including the following:  $69,000 at luxury hotels, $43,285 in lease payments for a Ferrari 488 GTB, $7,000 to Jaguar Land Rover, $3,000 to Tiffany & Co., and on other personal expenditures, including grocery shopping and a gym membership.

84.     In less than one year, between May 2021 and April 2022, Nicholas received at least $289,000 of investor funds, which he likewise spent on personal uses.

### Defendants' Scheme Collapses

85.     By approximately November 2021, EmpiresX stopped honoring investor withdrawals, providing investors with the fake excuse that it had to process withdrawals manually rather than automatically due to technical difficulties at its crypto trading firm.

86.     Then, in January 2022, blaming unspecified "deleterious acts" and unidentified "stakeholders [who] have violated standards and acted in ways that purport to harm the company," EmpiresX stated in a written announcement to investors that it would repay all investor funds and dissolve by the end of February 2022.

87.     This promise of repayment was false.  Since November 2021, EmpiresX has failed to honor withdrawal requests or otherwise repay its defrauded investors.

88.     In the meantime, after receiving subpoenas as part of the SEC's investigation, Pires and Goncalves began winding down EmpiresX's operations in the United States.  On information and belief, they have relocated to Brazil, where they are both citizens.

### COUNT I

**Violations of Sections 5(a) and (c) of the Securities Act
(Against All Defendants)**

89.     Paragraphs 1 through 88 are realleged and incorporated by reference.

90.     At all times alleged in this Complaint, no registration statement was filed or in effect with the SEC pursuant to the Securities Act with respect to the securities and transactions issued by EmpiresX described in this Complaint, and no exemption from registration existed with respect to these securities and transactions.

91.     By their conduct, Defendants EmpiresX, Pires, Goncalves, and Nicholas, directly and indirectly:

(a)     made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b)     carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

(c)     made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the SEC as to such securities.

92.     By reason of the foregoing, Defendants EmpiresX, Pires, Goncalves, and Nicholas violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### COUNT II

### Violations of Section 17(a)(1) of the Securities Act
### (Against All Defendants)

93.     Paragraphs 1 through 88 are realleged and incorporated by reference as though fully set forth herein.

94.     By engaging in the conduct described above, Defendants EmpiresX, Pires, Goncalves, and Nicholas, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have employed devices, schemes and artifices to defraud.

95.     Defendants acted knowingly or recklessly in engaging in the fraudulent conduct described above.

96.     By engaging in the conduct described above, Defendants violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)] in the manner set forth above.

**COUNT III**

**Violations of Section 17(a)(2) of the Securities Act**
**(Against All Defendants)**

97.     Paragraphs 1 through 88 are realleged and incorporated by reference as though fully set forth herein.

98.     By engaging in the conduct described above, Defendants EmpiresX, Pires, Goncalves, and Nicholas, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have obtained money and property by means of untrue statements of material fact and by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

99.     Defendants acted knowingly or recklessly in engaging in the fraudulent conduct described above.

100.    Defendants also acted negligently in engaging in the conduct described

above.

101.    By engaging in the conduct described above, Defendants violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)] in the manner set forth above.

## COUNT IV

### Violations of Section 17(a)(3) of the Securities Act
### (Against All Defendants)

102.    Paragraphs 1 through 88 are realleged and incorporated by reference as though fully set forth herein.

103.    By engaging in the conduct described above, Defendants EmpiresX, Pires, Goncalves, and Nicholas, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

104.    Defendants acted knowingly or recklessly in engaging in the fraudulent conduct described above.

105.    Defendants also acted negligently in engaging in the conduct described above.

106.    By engaging in the conduct described above, Defendants violated Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)] in the manner set forth above.

## COUNT V

### Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(a)
### (Against All Defendants)

107.    Paragraphs 1 through 88 are realleged and incorporated by reference.

108.    As more fully described in paragraphs 1 through 88 above, Defendants EmpiresX, Pires, Goncalves, and Nicholas, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly, used and employed devices, schemes and artifices to defraud.

109.    Defendants knew, or were reckless in not knowing, of the facts and circumstances described in paragraphs 1 through 88 above.

110.    By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) thereunder [17 C.F.R. 240.10b-5(a)] in the manner set forth above.

**COUNT VI**

**Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(b)**
**(Against All Defendants)**

111.    Paragraphs 1 through 88 are realleged and incorporated by reference.

112.    As more fully described in paragraphs 1 through 88 above, Defendants EmpiresX, Pires, Goncalves, and Nicholas, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly, made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

113.    Defendants knew, or were reckless in not knowing, of the facts and circumstances described in paragraphs 1 through 88 above.

114.    By reason of the foregoing, Defendants violated Section 10(b) of the

Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. 240.10b-5(b)] in the manner set forth above.

**COUNT VII**

**Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(c)**
**(Against All Defendants)**

115.    Paragraphs 1 through 88 are realleged and incorporated by reference.

116.    As more fully described in paragraphs 1 through 88 above, Defendants EmpiresX, Pires, Goncalves, and Nicholas, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly, engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities.

117.    Defendants knew, or were reckless in not knowing, of the facts and circumstances described in paragraphs 1 through 88 above.

118.    By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(c) thereunder [17 C.F.R. 240.10b-5(c)] in the manner set forth above.

**RELIEF REQUESTED**

**WHEREFORE,** the SEC respectfully requests that this Court:

**I.**

Issue permanent injunctions restraining and enjoining Defendants from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), (c), and 77q(a)]; and Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 thereunder [17

22

CFR § 240.10b-5]; and from soliciting any new investors, accepting additional funds from existing investors, or issuing, purchasing, offering, or selling any security.

**II.**

Order Defendants EmpiresX, Pires and Goncalves to disgorge, jointly and severally, and Nicholas to disgorge, the ill-gotten gains received because of the violations alleged herein, including prejudgment interest, pursuant to Sections 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)].

**III.**

Order Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

**IV.**

Permanently bar defendants Pires and Goncalves from serving as an officer or director of any company that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

**V.**

Grant such other relief as this Court deems appropriate.

**JURY DEMAND**

The SEC hereby requests a trial by jury.

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

Date: June 30, 2022

  /s/ Benjamin J. Hanauer     
By: Benjamin J. Hanauer
    One of Its Attorneys

Benjamin J. Hanauer
Senior Trial Counsel
S.D. Fla. No. A5502908
Direct Dial: (312) 353-8642
Email: HanauerB@SEC.gov

Christine B. Jeon
S.D. Fla. No. A5502884
Senior Counsel
Direct Dial: (312) 353-7419
Email: JeonC@SEC.gov

Devlin Su
Senior Counsel
S.D. Fla. No. A5502883
Direct Dial: (312) 596-6012
Email: SuDe@SEC.gov

Attorneys for Plaintiff
**UNITED STATES SECURITIES**
  **AND EXCHANGE COMMISSION**
175 W. Jackson Blvd., Suite 1450
Chicago, Illinois 60604
Tel: (312) 353-7390