UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-21995-CIV-ALTONAGA/Torres

UNITED STATES SECURITIES AND
EXCHANGE COMISSION,

    Plaintiff,
v.

EMPIRES CONSULTING CORP. (DBA
"EMPIRESX"), *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court upon Plaintiff SEC's Renewed Motion for Default Judgment Against Defendants Emerson Sousa Pires and Flavio Mendes Goncalves [ECF No. 47] filed on June 5, 2023.  The Court has carefully considered the Motion, the record, and applicable law.

### I. BACKGROUND

On June 30, 2022, the SEC filed a seven-count Complaint [ECF No. 1] alleging an illegal offering fraud scheme perpetrated by Pires and Goncalves; their company, Defendant Empires Consulting Corp. ("EmpiresX"); and EmpiresX's head trader, Defendant Joshua David Nicholas. (*See* Compl. ¶ 1).  The Complaint alleges that Pires and Goncalves fled from South Florida to Brazil, where both are citizens.  (*See id.* ¶¶ 14–15, 88).

On March 29, 2023, per the Court's March 29, 2023 Order [ECF No. 24] authorizing alternative service, the SEC served Pires and Goncalves by email.  (*See* Proof of Service Decls. of B. Hanauer [ECF Nos. 28 & 29]).  When Pires and Goncalves failed to respond to the Complaint, a Clerk's Default [ECF No. 37] was entered against them on April 20, 2023.  In the meantime, the

SEC resolved its claims against Nicholas and EmpiresX via Consent Judgments. (*See* Apr. 19, 2023 Order [ECF No. 33]; May 22, 2023 Order [ECF No. 42]).

### A. The Complaint's Allegations

By virtue of their default, Pires and Goncalves have admitted the following facts:

In late 2020, Pires and Goncalves founded EmpiresX and based the company in South Florida. (*See* Compl. ¶ 17). Pires was EmpiresX's president, director, and registered agent, while Goncalves was its vice-president and director. (*See id.* ¶¶ 14–15). Pires and Goncalves controlled EmpiresX, including its operations, the content of representations made to investors, and how EmpiresX used funds received from investors. (*See id.* ¶ 17). In less than two years, EmpiresX raised at least $40 million by selling its securities to thousands of investors. (*See id.* ¶¶ 1, 7). EmpiresX did not register its securities or offerings with the SEC. (*See id.* ¶¶ 13, 19).

Defendants lured investors with claims of "exponential" profits, expected investment returns of 1% per *day*, and the prospect of making millions of dollars "in a matter of months." (*Id.* ¶¶ 2, 18, 21, 34–36). Defendants told investors that EmpiresX would generate these outsized returns either through a proprietary trading "bot" or by manual trading performed by Nicholas. (*Id.* ¶¶ 2, 22–23). These statements were lies. In reality, the bot was fake. (*See id.* ¶¶ 2, 37–49). As for the purported manual trading, EmpiresX traded only a fraction of the funds it took from investors, and that limited trading failed to earn anywhere near the touted returns. (*See id.* ¶¶ 2, 50–58). Instead, Pires and Goncalves misappropriated large sums of investors' money for personal uses such as luxury cars, real estate, and travel. (*See id.* ¶¶ 3, 79–84).

Defendants further lied to investors to give assurances of the "transparency and safety" of their investments, even during market downturns. (*Id.* ¶¶ 4, 32–33). Defendants falsely told investors that EmpiresX had filed with the SEC to register as a hedge fund and directed investors

to the filings of an unaffiliated hedge fund with a name similar to EmpiresX that actually had registered with the SEC. (*See id.* ¶¶ 4, 59–66). Similarly, Defendants touted Nicholas as a licensed trader and deceptively showed investors the credentials of a different trader with a similar name, while concealing that Nicholas had been suspended from trading for misappropriating customer funds. (*See id.* ¶¶ 4, 67–71).

Pires and Goncalves determined the above misrepresentations made to EmpiresX investors. (*See id.* ¶ 17). They also made specific false and misleading statements. For instance, Pires misleadingly told investors their investment proceeds would be transferred to an EmpiresX brokerage account and that investors would keep 80% of EmpiresX's profits. (*See id.* ¶¶ 28, 39). Pires also told investors that EmpiresX provides "amazing profits" regardless of the market's general performance. (*Id.* ¶ 52). Pires likewise lied about EmpiresX filing registration paperwork with the SEC. (*See id.* ¶ 62). And he diverted approximately $1.5 million of investor funds for personal expenditures including travel, housing, luxury vehicles, and direct payments to himself, one of his companies, and friends and relatives. (*See id.* ¶ 82).

Goncalves also lied to investors by telling them trading profits would be reinvested in EmpiresX (*see id.* ¶ 39); showing investors the fake trading bot in purported operation (*see id.* ¶ 43); and displaying phony account balances to investors (*see id.* ¶¶ 44, 51). Goncalves also lied about EmpiresX's SEC registration status and Nicholas's licensure. (*See id.* ¶¶ 63, 70). And he falsely portrayed EmpiresX as a secure investment by telling investors they could withdraw their funds whenever they wanted. (*See id.* ¶ 74). Goncalves also misappropriated at least $520,000 of investor money to spend on luxury hotels, fancy cars, jewelry, and payments to relatives. (*See id.* ¶ 83).

### B. Additional Facts from Declaration of SEC Accountant

In support of its Motion, the SEC attaches as Exhibit 1 the Declaration of SEC accountant Larry Brannon [ECF No. 47-1], which supports the SEC's claims for disgorgement. Mr. Brannon is a CPA and forensic auditor who worked on the SEC's investigation that preceded this lawsuit. (*See* Brannon Decl. ¶¶ 1–4). Mr. Brannon reviewed and analyzed records for bank accounts controlled by Pires and Goncalves that received money from EmpiresX investors. (*See id.* ¶ 8). Mr. Brannon's analysis shows that those accounts received approximately $10,338,876 from EmpiresX investors during the period at issue in the Complaint. (*See id.* ¶ 9).

Mr. Brannon also worked with an expert firm retained by the SEC that analyzed crypto asset transactions between EmpiresX investors and digital wallets controlled by Pires and Goncalves. (*See id.* ¶ 11). That expert firm determined those wallets received approximately $96,025,470 in crypto assets (Ether, Tether, and Bitcoin) from investors. (*See id.* ¶ 12). The expert firm further concluded that the wallets returned approximately $73,208,682 worth of crypto assets to EmpiresX investors, such that the wallets Pires and Goncalves control retained approximately $22,816,788 worth of crypto assets. (*See id.* ¶¶ 13–14).

To calculate the SEC's disgorgement demand, Mr. Brannon added the net amounts of cash and crypto assets retained by Pires and Goncalves, which total $33,155,664. (*See id.* ¶ 15). He then subtracted from that amount: (a) $289,000 Pires and Goncalves paid to Nicholas; and (b) $687,593 in funds formerly controlled by Pires that were frozen in another SEC action against him, *SEC v. MCC Int'l Corp.*, No. 22-cv-14129 (S.D. Fla. 2023). (*See id.*). Pires and Goncalves thus collectively received $32,179,070 in net ill-gotten gains as a result of the EmpiresX offering. (*Id.*).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b)(2), the Court "is authorized to enter a final default judgment against a party who has failed to plead in response to a complaint." *Mia. Perfume Junction, Inc. v. 786 Perfume Plus, LLC*, No. 16-25383-Civ, 2017 WL 3099398, at *2 (S.D. Fla. Apr. 11, 2017) (citation omitted); *see also Ivanna, LLC v. S/Y Serendipity*, No. 18-22672-Civ, 2018 WL 7463356, at *1 (S.D. Fla. Nov. 28, 2018) ("Granting a motion for default judgment is within the trial court's discretion." (citation omitted)).

"By failing to answer" or otherwise respond to a complaint and allowing a clerk's default to be entered against it under Federal Rule of Civil Procedure 55(a), "a defendant is deemed to admit to the [well-pleaded] factual allegations in the Complaint." *Longyan Dubaite Qipie Co. v. Individuals, P'ships & Unincorporated Associations Identified on Schedule "A"*, No. 22-23730-Civ, 2023 WL 2388609, at *2 (S.D. Fla. Jan. 20, 2023) (alteration added; citation omitted)); *Pas Consulting Grp., LLC v. Dynamic Int'l, LLC*, No. 17-Civ-21059, 2017 WL 7355326, at *1 (S.D. Fla. May 25, 2017) ("The entry of default constitutes an admission by the Defendant of the well-pleaded allegations of the Complaint." (citations omitted)).

Nevertheless, when presented with a motion for a default judgment, "[a] court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b)." *Gov't Emps. Ins. Co. v. Gomez-Cortes*, No. 20-21558-Civ, 2023 WL 2432339, at *2 (S.D. Fla. Feb. 22, 2023) (alteration added; citation omitted). In reviewing a complaint for the foregoing purposes, "a court looks to see whether a complaint contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Trinity Logistics, Inc. v. Flava Puff, LLC*, No. 18-60081-Civ, 2018 WL 4208206, at *2 (S.D. Fla. Apr. 23, 2018) (citations and quotation marks omitted).

If the well-pleaded allegations contained in a complaint — deemed admitted by the defendant's default — are sufficient to establish liability, "the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount." *Gov't Emps. Ins. Co.*, 2023 WL 2432339, at *2 (citations omitted); *see Affiliati Network, Inc. v. Scalice*, No. 20-22492-Civ, 2020 WL 13411937, at *2 (S.D. Fla. Sept. 11, 2020) ("If the facts in the complaint are sufficient to establish liability, then the Court must determine the appropriate amount of damages." (citation omitted)).

"Where all the essential evidence is on record, an evidentiary hearing on damages is not required [under Rule 55(b)(2)]." *Iberiabank v. BG Cap. Mgmt. S. Fla., LLC*, No. 18-60301-Civ, 2018 WL 10517085, at *2 (S.D. Fla. Sept. 13, 2018) (alteration added; citing *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)). In lieu of an evidentiary hearing, damages "can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested." *Gov't Emps. Ins. Co.*, 2023 WL 2432339, at *2 (citing *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)).

### III. DISCUSSION

**A. The Complaint's Factual Allegations Establish that Pires and Goncalves Violated the Federal Securities Laws**

**1. Pires and Goncalves Violated the Securities Registration Provisions**

Count I of the Complaint alleges that Pires and Goncalves violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. sections 77e(a) and 77e(c), by engaging in an unregistered securities offering. (*See* Compl. ¶¶ 89–92). "In order to establish a prima facie case for a violation of [Section] 5 of the Securities Act, the SEC must demonstrate that (1) the defendant directly or indirectly sold or offered to sell securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect."

6

*SEC v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004) (alteration added; citations omitted). "To demonstrate that a defendant sold securities, the SEC must prove that the defendant was a 'necessary participant' or 'substantial factor' in the illicit sale." *Id.* at 1215 (citations omitted).

The Complaint's allegations, which are now accepted as facts by the Court, satisfy each of these elements. First, the Complaint alleges that EmpiresX, which Pires and Goncalves formed and controlled, offered and sold at least $40 million in EmpiresX securities to investors. (*See* Compl. ¶ 18). Beyond controlling the offering, Pires and Goncalves both participated in the offering by pitching EmpiresX securities to investors. (*See id.* ¶¶ 28, 39, 52, 62 (Pires); *id.* ¶¶ 39, 43, 44, 51, 63, 70, 74 (Goncalves)). The Complaint further alleges that the EmpiresX offering "made use of the means and instrumentalities of interstate commerce." (*Id.* ¶ 12). Finally, the Complaint alleges that EmpiresX's securities and securities offerings were not registered with the SEC. (*See id.* ¶ 19).

Accordingly, Pires and Goncalves violated Section 5 of the Securities Act.

**2. Pires and Goncalves Violated the Antifraud Provisions**

Counts II, III, and IV allege that Pires and Goncalves violated Sections 17(a)(1), (a)(2), and (a)(3) of the Securities Act, 15 U.S.C. sections 77q(a)(1), (a)(2), (a)(3), by fraudulently offering and selling EmpiresX securities. (*See* Compl. ¶¶ 93–106). Counts V, VI, and VII allege they violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. section 78j(b); and Rules 10b-5(a), (b), and (c), 17 C.F.R. §§ 240.10b-5(a), (b), (c), by engaging in fraud in connection with the purchase and sale of EmpiresX securities. (*See* Compl. ¶¶ 107–18).

"In order to establish a [S]ection 10(b) or Rule 10b-5 violation, the SEC must prove (1) a material misrepresentation or materially misleading omission; (2) in connection with the purchase

7

Case 1:22-cv-21995-CMA Document 48 Entered on FLSD Docket 06/21/2023 Page 8 of 15

CASE NO. 22-21995-CIV-ALTONAGA/Torres

or sale of securities; (3) made with scienter." *SEC v. Monterosso*, 756 F.3d 1326, 1333–34 (11th Cir. 2014) (alteration added; citations omitted). Section 10(b) and Rule 10b-5 violations are also established by showing the defendant "employed a device, scheme or artifice to defraud," with scienter, in connection with the purchase or sale of securities. *SEC v. Arbitrade Ltd.*, No. 22-cv-23171, 2023 WL 2785015, at *7–8 (S.D. Fla. Apr. 5, 2023) (engaging in "sham" transactions constitutes a "scheme" in violation of Section 10(b)); *see also SEC v. Spartan Sec. Grp., LTD*, No. 19-cv-448, 2019 WL 2372277, at *3 (M.D. Fla. June 5, 2019) (a defendant engages in a fraudulent scheme when he "commits a deceptive or manipulative act" (citation omitted)).

For offers and sales of securities, establishing violations of Section 17(a) of the Securities Act "requires substantially similar proof" as required for Exchange Act Section 10(b) liability. *Monterosso*, 756 F.3d at 1334 (citation omitted); *see also SEC v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007). However, violations of Sections 17(a)(2) and (a)(3) may be premised on negligence as opposed to scienter. *See id.*

The described allegations demonstrate that Pires and Goncalves violated these antifraud provisions by making false statements to investors and engaging in a fraudulent scheme. *See* 15 U.S.C. §§ 77q(a)(1), (a)(2), (a)(3); *id.* § 78j(b); 17 C.F.R. §§ 240.10b-5(a), (b), (c). They made false statements about the trading EmpiresX would perform and profits investors should expect. (*See* Compl. ¶¶ 28, 39, 43, 44, 51, 52, 62, 82). To assure investors, they also lied about EmpiresX's SEC registration and Nicholas's licenses and credentials. (*See id.* ¶¶ 63, 70). And they engaged in "sham" trading by showing the fake bot purporting to execute profitable trades. (*See id.* ¶ 43). Pires and Goncalves acted with scienter because they made their false statements knowingly or recklessly. (*See id.* ¶¶ 48, 54, 66). Their scienter is evidenced by their misappropriation of investor funds and flight to Brazil after learning of the SEC investigation. (*See id.* ¶¶ 14–15, 88).

Accordingly, Pires and Goncalves violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.

**B. The Injunctive and Financial Remedies Sought in the Complaint are Warranted and in the Public Interest**

The SEC seeks remedies of: (a) permanent injunctions; (b) joint and several disgorgements in the amount of $32,179,070, plus $2,661,610 in prejudgment interest; (c) civil penalties in the amount of $6 million for Pires and $5 million for Goncalves; and (d) officer and director bars.

**1. Permanent Injunctions**

"The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." *Calvo*, 378 F.3d at 1216. For the first prong, the above discussion shows that Pires and Goncalves violated the securities laws provisions as charged in the Complaint. As for the second prong,

> [i]ndicia that a wrong will be repeated include the "egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations."

*Id.* (alteration added; citations omitted).

Each of these factors supports permanent injunctions prohibiting Pires and Goncalves from violating Securities Act Sections 5(a), 5(c), and 17(a) and Exchange Act Section 10(b) and Rule 10b-5. Their fraud — including lies about the safety and profitability of the EmpiresX investment and pitching investors with a phony trading bot — was egregious; repeated itself for more than a year; and was committed with a high degree of scienter. The fact that they fled the country and failed to respond to this lawsuit shows they have not accepted responsibility or given any assurances against future violations. *See, e.g.*, *SEC v. Caputo*, No. 22-cv-61693, 2023 WL

3740926, at *6 (S.D. Fla. May 17, 2023), *report and recommendation adopted*, No. 22-61693-Civ, 2023 WL 3737711 (S.D. Fla. May 31, 2023). And their success at raising tens of millions of dollars from investors establishes their motive and opportunity to do so again unless enjoined. (*See* Compl. ¶ 79).

Because of their egregious conduct involving the fraudulent offers and sales of unregistered securities, the Court also enjoins Pires and Goncalves from soliciting any new investors or accepting additional funds from existing investors and prohibiting their issuance, purchase, offer, or sale of any security (except for their own personal accounts). Courts impose conduct-based injunctions aimed at specifically deterring the violative conduct at issue. *See, e.g.*, *SEC v. Berbel*, No. 17-cv-23572, 2018 WL 11448433, at *3 (S.D. Fla. Nov. 7, 2018); *see also SEC v. Harrison*, No. 18-cv-1003, 2020 WL 3259099, at *1 (M.D. Fla. June 16, 2020). Indeed, the Court has already imposed such conduct-based injunctions against Pires and Goncalves's Co-Defendants, further demonstrating the propriety of such relief. (*See* Apr. 19, 2023 Order 4–5; May 22, 2023 Order 4–5).

    **2. Disgorgement**

"In any action or proceeding brought by the [SEC] under any provision of the securities laws, the [SEC] may seek, and any Federal court may order, disgorgement." 15 U.S.C. § 78u(d)(7) (alterations added). "Disgorgement is an equitable remedy that 'deprive[s] wrongdoers of their net profits from unlawful activity[.]'" *Caputo*, 2023 WL 3740926, at *6 (alterations in original; quoting *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020)). "In order to be entitled to disgorgement, the SEC needs to produce only a reasonable approximation of the defendant's ill-gotten gains." *Monterosso*, 756 F.3d at 1337 (citation omitted); *see also Liu*, 140 S. Ct. at 1940 ("a disgorgement

award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible" under the securities laws).

"Once the SEC has produced a reasonable approximation of the defendant's unlawfully acquired assets, the burden shifts to the defendant to demonstrate the SEC's estimate is not reasonable." *Monterosso*, 756 F.3d at 1337 (citation omitted). "Exactitude is not a requirement;" such that if "the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Calvo*, 378 F.3d at 1217 (quotation marks and citations omitted). A defendant's financial situation, or any financial hardship disgorgement would impose, are not factors the Court should consider in determining disgorgement. *See SEC v. Warren*, 534 F.3d 1368, 1370 & n.2 (11th Cir. 2008).

A joint and several disgorgement award is appropriate in situations including where "partners engaged in concerted wrongdoing." *Liu*, 140 S. Ct. at 1945 (citation omitted); *see also Calvo*, 378 F.3d at 1215; *Monterosso*, 756 F.3d at 1337–38. This proposition "holds true even where one defendant is more culpable than another." *Calvo*, 378 F.3d at 1215.

The Court finds that Pires and Goncalves should be held jointly and severally liable for disgorgement, because they acted in concert to perpetrate the EmpiresX fraud. The Complaint alleges Pires and Goncalves: (a) jointly founded EmpiresX (*see* Compl. ¶¶ 13–15, 17); (b) were EmpiresX's directors and executive officers (*see id.* ¶¶ 14–15); and (c) "controlled EmpiresX, including its operations, the content of representations made to investors, and how EmpiresX used funds received from investors" (*id.* ¶ 17). Moreover, the Complaint alleges that both Pires and Goncalves, individually and jointly, made fraudulent statements to investors and each diverted investor funds for their own personal benefit. (*See id.* ¶¶ 28, 39, 52, 62, 82 (Pires); *id.* ¶¶ 39, 43, 44, 51, 63, 70, 74, 83 (Goncalves); *id.* ¶¶ 31–38, 42, 48, 50, 54, 56-59, 66–69, 72–73, 76–78, 80–

81, 85–87 (jointly)). The Complaint also alleges that after learning of the SEC's investigation, Pires and Goncalves wound down EmpiresX's U.S. operations and fled to Brazil. (*See id.* ¶ 88).

As described above and in Mr. Brannon's declaration, the net profits received by Pires and Goncalves equal $32,179,070. That figure represents the net amounts of cash and crypto assets Pires and Goncalves retained, minus monies paid to Nicholas and Pires's frozen assets in *SEC v. MCC Int'l Corp.*, No. 22-cv-14129 (S.D. Fla. 2023). The Court thus orders Pires and Goncalves, jointly and severally, to pay that amount in disgorgement.

The Court also orders Pires and Goncalves to pay prejudgment interest on their disgorgement obligation. *See*, *e.g.*, *Merch. Cap., LLC*, 486 F. App'x at 97. "Prejudgment interest on disgorgement is generally calculated using the Internal Revenue Service underpayment rate." *Caputo*, 2023 WL 3740926, at *5 (citing *SEC v. Lauer*, 478 F. App'x 550, 557–58 (11th Cir. 2012)). Here, Mr. Brannon's calculations used the IRS underpayment rate to arrive at a prejudgment interest amount of $2,661,610. (*See* Brannon Decl. 6).

3. **Civil Penalties**

Both the Securities Act and Exchange Act authorize the imposition of civil penalties upon "'a proper showing' that a violation has occurred and a penalty is warranted." *Warren*, 534 F.3d at 1370 (citing 15 U.S.C. § 77t(d); *id.* § 78u(d)(3)). "Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." *Monterosso*, 756 F.3d at 1338 (citation omitted). Maximum third-tier penalties may be imposed when the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons[.]" *Id.* (alteration added; quotation marks omitted; citing 15 U.S.C. § 77t(d)(2); *id.* § 78u(d)(3)(B)). The Securities Act and Exchange Act both authorize the

Court to order penalties not exceeding the *greater* of certain enumerated amounts[1] or "the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. § 77t(d)(2); *id.* § 78u(d)(3)(B)(iii). When determining penalties, courts consider factors including:

> (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

*SEC v. Huff*, 758 F. Supp. 2d 1288, 1364 (S.D. Fla. 2010).

For the same reasons injunctive relief is warranted based on the similar factors discussed above, the Court orders that Pires pay a $6 million penalty and Goncalves pay a $5 million penalty. These penalties serve their purposes to punish and deter and are appropriate in relation to Pires and Goncalves' $32 million joint pecuniary gains at the expense of the defrauded EmpiresX investors. *See, e.g.*, *SEC v. Complete Bus. Sols. Grp., Inc.*, No. 20-cv-81205, 2022 WL 17243360, at *19–21 (S.D. Fla. Nov. 22, 2022) (ordering $43.7 million penalty against individuals who owed disgorgement of $142 million); *SEC v. Sky Way Global, LLC*, 2013 WL 12156317, at *2 (M.D. Fla. Mar. 1, 2013) (ordering $1.9 million penalty for individual who owed disgorgement of $1.9 million).[2]

### 4. Officer and Director Bars

Section 17(a)(1) of the Securities Act or Section 10(b) of Exchange Act authorizes the Court to bar a defendant who violates them from serving as a public company officer or director

---

[1] *See* SEC, *Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of January 15, 2023)*, https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.

[2] The SEC seeks, and the Court orders, a higher penalty against Pires because he is a recidivist. *See SEC v. MCC Int'l Corp.*, No. 22-cv-14129 (S.D. Fla. 2023).

"if the person's conduct demonstrates unfitness to serve" in that capacity. 15 U.S.C. § 77t(e); *id.* § 78u(d)(2); *see also SEC v. Gathright*, No. 15-cv-62028, 2016 WL 9632367, at *4 (S.D. Fla. Apr. 6, 2016); *Harrison*, 2020 WL 3259099, at *6–7.

> In determining whether to impose an officer and director bar, a court may consider the following factors: (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat-offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur.

*SEC v. Brennan*, No. 12-cv-61074, 2013 WL 12091621, at *4 (S.D. Fla. Dec. 10, 2013).

The same reasons that justify injunctions and penalties for Pires and Goncalves likewise demonstrate that they are completely unfit to serve as public company officers or directors.

### III.   CONCLUSION

Based on the foregoing, the Court concludes that there is sufficient basis to grant Plaintiff's Motion. Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff SEC's Renewed Motion for Default Judgment Against Defendants Emerson Sousa Pires and Flavio Mendes Goncalves **[ECF No. 47]** is **GRANTED**. Final judgment shall be entered by separate order that: (a) enjoins Defendants Pires and Goncalves from future violations of the securities laws at issue in the Complaint; (b) imposes a conduct-based injunction as described above; (c) orders joint and several disgorgements of $32,179,070, plus $2,661,610 in prejudgment interest; (d) orders civil penalties of $6 million for Pires and $5 million for Goncalves; and (e) bars each of them from serving as a public company officer and director. The Court reserves jurisdiction to enter such other and further orders as deemed proper. The Clerk is directed to **CLOSE** this case.

CASE NO. 22-21995-CIV-ALTONAGA/Torres

**DONE AND ORDERED** in Miami, Florida, this 21st day of June, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record